UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BRIAN R. DELLA ROCCA, et al.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | Civil Action No. 22-786 (DLF) |

**CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, Defendant United States Postal Service ("Defendant" or "the Postal Service") respectfully cross-moves for summary judgment and opposes Plaintiffs' motion for summary judgment, ECF No. 28, Pl. Mot., for the reasons explained herein.

The Postal Service has gone well beyond its legal obligation to conduct a reasonable search in response to Plaintiffs' ever-evolving Freedom of Information Act ("FOIA") request. Despite Defendant's best efforts, Plaintiffs remain dissatisfied and speculate that there should be more responsive documents. *See generally* Pl. Mot. But "mere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir 2004).

As there are no material facts in genuine dispute, the Postal Service respectfully moves for summary judgment as to all claims. The enclosed memorandum of points and authorities, statement of facts, and supporting declaration establish that the Postal Service is entitled to summary judgment in its favor.

**LEGAL STANDARD**

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To prevail on a motion for summary judgment in a case brought under . . . FOIA when the adequacy of an agency search is challenged, the 'defending agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Wilson v. Dep't of Just.*, 270 F. Supp. 3d 248, 254 (D.D.C. 2017) (quoting *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007)) (other citation omitted). Applying "the reasonableness test to determine the adequacy of a search methodology[,]" "a 'FOIA search is sufficient if the agency makes a good faith effort to conduct a search for the requested records, using the methods which can be reasonably expected to produce the information requested.'" *Id.* (quoting *Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 315 (D.C. Cir. 2006)) (other citation omitted). If a plaintiff does not provide evidence that an agency has acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations, provided that the declarations are not conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *Rojas-Vega v. Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 306 (D.D.C. 2018) (internal quotation marks omitted).

**ARGUMENT**

I. **The Postal Service Conducted a Reasonable Search.**

An agency is entitled to summary judgment if it establishes that it conducted an adequate search and produced all non-exempt information that it located and that is responsive to a plaintiff's FOIA request. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). To make

a prima facie showing of adequacy, the agency must demonstrate that it made a good-faith effort to search for responsive records "using methods which can be reasonably expected to produce the information requested." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler*, 473 F.3d at 318. "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice[.]" *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted); *see also Wilbur*, 355 F.3d at 678 ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

Janine Castorina, the Postal Service's Chief Privacy and Records Management Officer, explained in her declaration that Plaintiffs' FOIA request for information about four Postal Service contracts with private carriers consisted of five separate sub-requests (Requests 1 to 5). Castorina Decl. ¶ 5. As to Request 1, the contracts themselves, the Postal Service released redacted contracts, Plaintiffs have never objected to those redactions, *id.* ¶¶ 7, 10, 13, and have reported that Request 1 has been satisfied, ECF No. 26, Jt. Status Rep., Nov. 17, 2023, ¶ 7.

Requests 2, 3, 4, and 5, however, were not as straightforward. Ms. Castorina explained that Requests 2, 4, and 5—"activity records/reports," "administrative notes," and "billing information" relating to the contracts—were "overly broad." *Id.* ¶ 7; *see also, e.g.*, *Evans v.*

*Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) ("Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'") (quoting 5 U.S.C. § 552(a)(3)(A)); *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (request must allow the agency "to determine precisely what records are being requested"); *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) ("[b]road, sweeping requests lacking specificity are not sufficient").

The Postal Service solicited clarification from Plaintiffs on multiple occasions. Initially, Plaintiffs were unable to more clearly describe what records they were seeking. Castorina Decl. ¶¶ 8, 9. But after the Postal Service followed up yet again, and after some clarification, Ms. Castorina reached out to Supply Management through the Procurement Law Department. *Id.* ¶ 17. Three branches within Supply Management were searched for documents relating to the contracts, and the Postal Service produced a contract activity log, an email to one of the private carriers about an audit, an amendment to a transportation services contract, a negotiated cost statement, a daily log report, and a highway contract route schedule information document, most with redactions, which Plaintiffs has not challenged. *Id.* ¶ 18.

As to Request 3, the "cargo information," Ms. Castorina explained that such records, specifically the "cargo manifests" from October 2020, were only maintained for ninety days (correcting a previous statement that the retention period was only thirty days), and thus, were no longer available as of early 2021, well before Plaintiffs' January 2022 FOIA request. *Id.* ¶¶ 7, 8, 21; *see* Handbook AS-353, *Guide to Privacy, the Freedom of Information Act, and Records Management*, § 802.200 (Mail Management and Tracking Activity, Retention and Disposal), available at https://about.usps.com/handbooks/as353/as353apdx_049.htm (stating that "carrier

network tracking records are retained for up to 30 days for mail and up to 90 days for packages and special services"). 

Plaintiffs later redefined Request 3 as seeking "records as to the specific contents within a particular container," which the Postal Service did not have, but the Postal Service was able to provide to Plaintiff two spreadsheets showing, more generally, the container contents for the contract routes in question. Castorina Decl. ¶¶ 15, 16. Specifically, the "Containers and Trips" spreadsheet provided container placard bar codes for the containers on the trucks on the days that Plaintiffs specified in their FOIA request. *Id.* ¶ 16. The container placard bar codes corresponded with container placard bar codes on the second spreadsheet, the "Container Contents" spreadsheet, which showed the parcel ID codes of the specific pieces of mail in those containers and whether those pieces of mail were (1) parcels, and if a parcel, whether it weighed more than or less than one pound, or (2) an envelope, and if an envelope, whether it was first class or priority mail. *Id.*

The fact that the Postal Service identified responsive records, upon further clarification after its initial responses, is evidence of the Postal Service's good faith, not bad faith as Plaintiff suggests. In *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986), the D.C. Circuit rejected the argument that later-produced records call the adequacy of search into question because "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file." The D.C. Circuit held that the additional releases suggest "a stronger, rather than a weaker, basis" for accepting the integrity of the search, and rejected "appellants' allegations of bad faith." *Id*.

As Ms. Castorina stated, "The Postal Service conducted a thorough search for responsive records where they are most likely to exist, at every point in this long process. Initially, when the Postal Service was unclear on what the Plaintiffs were seeking, the Postal Service produced

information in response to the only clear request, that of Request 1, which sought the contracts for specific routes. These documents were produced immediately." Castorina Decl. ¶ 20. "Cargo manifests" sought in Request 3, however, were no longer available pursuant to the Postal Service's retention policy. *Id.* ¶ 21; *see* Handbook AS-353 § 802.200 (stating that "carrier network tracking records"—a category that includes "cargo manifests"—"are retained for up to 30 days for mail and up to 90 days for packages and special services"). Ultimately, after receiving clarification from Plaintiffs, the Postal Service produced information showing, generally, the container contents for the contract routes in question, but more specific information was not available. Castorina Decl. ¶¶ 16, 22, 23. Likewise, after seeking clarification regarding "activity records/reports," "administrative notes," and "billing information" in Requests 2, 4, and 5, the Postal Service produced further information. *Id.* ¶ 18.

In the end, as Ms. Castorina explained in her declaration, the Postal Service went above and beyond its obligation to conduct a reasonable search, engaging in an interactive process that exemplifies its good-faith efforts to respond to Plaintiffs' request for information. Ultimately, however, "Plaintiffs' discontent and failure to understand the information that the Postal Service has produced does not render the searches and subsequent productions inadequate." *Id.* ¶ 25. "Plaintiffs' speculation that more must exist, absent evidence to the contrary, also does not render the Postal Services' good faith search efforts and productions inadequate." *Id.* ¶ 26.

## II.     Plaintiff Has Not Provided Evidence of Bad Faith.

Ms. Castorina's declaration is afforded a presumption of good faith. *SafeCard*, 926 at 1200. Absent a showing by Plaintiffs "of countervailing evidence or apparent inconsistency of proof," her declaration "will suffice." *Perry*, 684 F.2d at 127. "[P]urely speculative claims about the existence and discoverability of other documents" does not overcome the good-faith presumption. *SafeCard*, 926 at 1200.

Plaintiffs attempt to rebut this good-faith presumption in two central ways. First, Plaintiffs argue that the Postal Service did not provide election mail logs that were exhibits to the Office of Inspector General's report that concluded that truck driver Jesse Morgan's allegations about missing election mail could not be corroborated. Pl. Mot. at 5, 8, 9. Plaintiff argues that the Postal Service should have disclosed the election mail logs because the logs fall within Request 3 ("Any and all cargo information (manifests, weights, types of cargo, etc.) relating to each contract [Contracts 11736, 17014, 001A1, and 117QJ].") and Request 4 ("Any and all administrative notes relating to any of the above contracts."). Plaintiffs' argument falls flat.

It is inaccurate to say that election mail logs fall under the categories of "cargo information" or "administrative notes." According to Plaintiffs, "Election mail logs clearly fit into 'cargo information' since it is a log of the election mail being transported by the truck." Pl. Mot. at 8. Plaintiff misapprehends the information contained on election mail logs and their function. Election mail logs are not tied to pieces of mail "being transported by the truck," but rather, the logs describe the election mail that arrives at a sorting facility "to account for the clearance of election mail," where it is then sorted for distribution. Castorina Dec. ¶¶ 27-28. The logs do not depict the destination of the mail, let alone the truck that will carry it, as Plaintiff wrongly presumes. "The logs detail the receipt of election mail, including the date of receipt at the location, the source of the election mail, and the disposition of the mailing." *Id.* ¶ 28. The logs "are not associated with any shipping or trucking contracts." *Id.* ¶ 30. "Once election mail is sorted from bulk pallets into delivery-point sequence, they are no longer tracked. The election mail has entered the mail-stream and the Postal Services does not track election mail separately from other mail." *Id.* ¶ 31. Therefore, election mail logs do not fall under the umbrella of "cargo information," and thus, the Postal Service had no obligation to search for them or produce them.

Likewise, Plaintiffs contend that "election mail logs would fit into Plaintiffs' request for 'administrative notes' as the logs are administratively maintained notes about election mail being transported by the truck." Pl. Mot. at 8. As Defendant has maintained, the term "administrative notes" lacks clarity and inclusion of election mail logs in the category of administrative notes because they are "administratively maintained" is a strained interpretation that would include just about any Postal Service recordkeeping. This interpretation would fall well beyond an agency's reasonable search obligations. *Tax Analysts* 117 F.3d at 610 (request must allow the agency "to determine precisely what records are being requested"); *Dale* 238 F. Supp. 2d at 104 ("[b]road, sweeping requests lacking specificity are not sufficient").

Moreover, even if the logs fell within these categories of information, the logs "are not a contractual item," Castorina Decl. ¶ 30, and thus, do not fall within the scope of Plaintiff's contract-specific FOIA request. Rather, the contracts that Plaintiffs identified are agreements between the Postal Service and private carriers to cover particular routes. Election mail logs, on the other hand, are kept at the sorting facility from where the election mail is cleared and distributed. *Id.* ¶¶ 28, 30. The logs "are not associated with any shipping or trucking contracts." *Id.* ¶ 30. "Once election mail is sorted from bulk pallets into delivery-point sequence, they are no longer tracked. The election mail has entered the mail-stream and the Postal Services does not track election mail separately from other mail." *Id.* ¶ 31. Thus, Plaintiffs' FOIA request that requests information relating to certain contracts between the Postal Service and private contractors to cover certain trucking routes does not encompass election mail logs.

Importantly, although the Postal Service had no obligation to provide the election mail logs that were exhibits to the Office of Inspector General report because they do not fall under the scope of their FOIA request for the reasons explained, after Plaintiffs identified the election mail logs as

- 8 -

the sticking point in their motion for summary judgment, the Postal Service did, in fact, disclose them to the extent they were not exempt under FOIA, and thus, this issue is moot. *Boyd v. Crim. Div. of Dep't of Just.*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("because the report was located in the work file and subsequently disclosed, the issue is moot for purposes of this FOIA action"); *Drake v. FAA*, 291 F.3d 59, 67 (D.C. Cir. 2002) (holding that disclosure mooted FOIA dispute); *Perry*, 684 F.2d at 125 (FOIA dispute mooted when agency produces requested record).

Second, Plaintiffs attempt to overcome the good-faith presumption of Ms. Castorina's declaration by questioning the destruction of records. Pl. Mot. at 9. This argument fails too. Plaintiffs argue that the Postal Service "provided no proof of the destruction of the requested records" and relies on Handbook AS-353, Section 6-5.1 as the source of the agency's duty to keep a "Records Disposal Notice." *Id.* But Handbook AS-353, Section 6-5.1, is inapplicable as it applies only to records maintained at "a[ ] [Federal Records Center] or commercial storage." *See* https://about.usps.com/handbooks/as353/as353c6_015.htm#_ep998397. Cargo manifests, however, are stored on site—not at a Federal Records Center or commercial storage—and thus there would be no records disposal notice under § 6-5.1. Castorina Decl. ¶ 21. Cargo manifests are considered "carrier network tracking records" under § 802.200, and thus, are retained for a maximum of ninety days and are then destroyed. *Id.* ¶¶ 14, 21. There is no records disposal notice requirement for such records.

Plaintiffs also "question" in their factual background section whether the ninety-day retention policy should apply to election mail logs or whether the twenty-two-month election records retention law should apply. Pl. Mot. at 6. But this is irrelevant as the election mails logs do not fall within the scope of Plaintiffs' FOIA request, and, as Plaintiffs' own exhibit shows,

Defendant made no representations as to the retention period for election mail logs. Pl. Mot. Ex. E (staying that "cargo manifests are only maintained for 90 days").

For these reasons, the Court should grant summary judgment in Defendant's favor. Ms. Castorina's declaration shows that it conducted a reasonable search. Plaintiffs have failed to provide any compelling evidence to rebut the presumption of good faith afforded to Ms. Castorina's declaration. The Postal Service has gone above and beyond its FOIA responsibilities and is entitled to summary judgment in its favor.

## CONCLUSION

The Court should deny Plaintiff's motion for summary judgment and grant Defendant's cross-motion for summary judgment.

Dated: February 28, 2024
        Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:      /s/ M. Jared Littman
    M. JARED LITTMAN
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-2523
    Jared.Littman@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN R. DELLA ROCCA, et al.,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>    Defendant. | Civil Action No. 23-876 (DLF) |

### [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment, the memorandum of points and authorities in support thereof, any opposition thereto, and the entire record herein, it is this ____ day of _____, 2024,

ORDERED that Plaintiff's Motion for Summary Judgment is DENIED;

ORDERED that Defendant's Cross-Motion for Summary Judgment is, GRANTED; and it is further

ORDERED summary judgment is hereby entered in favor of Defendant on Plaintiffs' claims in this action.

SO ORDERED:

_____         _____
Dated                                                                    DABNEY L. FRIEDICH
                                                                          United States District Judge