**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRIAN R. DELLA ROCCA, et. al., | |
| Plaintiff, | |
| v. | Civil Action No.22-0786 (DLF) |
| UNITED STATES POSTAL SERVICE, | |
| Defendants. | |

**DECLARATION OF JANINE CASTORINA**

I, Janine Castorina, make the following Declaration in lieu of affidavit in accordance with the provisions of 28 U.S.C. § 1746. I understand that my declaration may be introduced into the record of the above captioned action, or any other grievance, administrative proceeding, or suit pending in a court of law.

1. I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2. I currently hold the position of Chief Privacy and Records Management Officer for the United States Postal Service ("Postal Service"). Prior to holding my current position, I was an Attorney in the Commercial and Appellate Litigation section, from October 2011 to March 2016.

3. In my official capacity as Chief Privacy and Records Management Officer, I am responsible for establishing Postal Service policies relating to information disclosure, privacy, and records management; ensuring compliance with privacy and records statutes, regulations, and policies; and providing oversight and supervision of the Postal Service Privacy and Records Office, which, among other things, receives, tracks, and advises postal officials on how to

respond to FOIA requests. My responsibilities also include managing and coordinating the Postal Service's response to certain litigation arising under the FOIA, including the present complaint.

4. As the Chief Privacy and Records Management Officer, it is my responsibility, and that of my group within the Postal Service, to assist internal stakeholders with responses to FOIA requests and to help those stakeholders understand and navigate the FOIA exemptions.

## THE FOIA REQUEST

5. By an email, dated January 3, 2022, Plaintiffs submitted a FOIA requesting the following:

> All requests below relate to the following listed contracts during the period **from October 16, 2020 to October 21, 2020**:
> **Contract 11736**
> **Contract 17014**
> **Contract 001A1**
> **Contract 117QJ**
>
> Request 1: Complete copies of all contracts.
>
> Request 2: Any and all activity records/reports relating to the above contracts.
>
> Request 3: Any and all cargo information (manifests, weights, types of cargo, etc.) relating to each contract
>
> Request 4: Any and all administrative notes relating to any of the above contracts
>
> Request 5: Any and all billing information relating to the above contracts (for work done within the time shown above, if any).

6. Plaintiffs' FOIA request was assigned number 2022-FPRO-00595.

7. By letter dated January 20, 2022, the Postal Service issued an initial decision. The Postal Service released redacted contracts, for all those requested, in satisfaction of Request 1. The redactions for the responsive records were pursuant to Exemptions 3, 4, and 6. The Postal Service further responded that the records requested in Request 3 are only maintained

for 90 days and as such, the Postal Service is no longer in possession of those records. The Postal Service then notified Plaintiff that his remaining requests, Requests 2, 4 and 5, were overly broad and asked Plaintiff to clarify what records were sought.

8. In an email, dated February 7, 2022, Plaintiffs attempted to clarify its Requests for 2, 4, and 5, by adding the locations of New York and Pennsylvania. Plaintiffs also renewed its request for information in Request 3, by adding the same location data and noting some confusion as to the retention period. Plaintiffs were initially informed that the retention period for such information was 30 days, which was an error that the Postal Service corrected. The proper retention period was 90 days.

9. In a letter, dated April 8, 2022, the Postal Service responded to Plaintiffs informing them that it considered Requests 2, 4, and 5 to still be overly broad because it was still not clear what records were being sought. The Postal Service did not understand the nature of the records sought, so the narrowing of location was not sufficient to inform the Postal Service of the records it should attempt to locate. Moreover, the Postal Service does not store contract records or financial records onsite at various shipping locations so the location information was unhelpful. In this same letter, the Postal Service reiterated that there were no records responsive to Request 3.

10. Plaintiffs did not appeal either the redactions to the records provided, in response to Request 1 on January 20, 2022, or the no records determination made regarding the cargo manifests that the Postal Service determined were destroyed pursuant to its 90-day retention policy.

11. On April 4, 2022, Plaintiffs initiated the instant lawsuit.

**DURING THE COURSE OF THIS LITIGATION**

12. The Postal Service answered Plaintiffs' complaint on June 1, 2022.

13. On June 17, 2022, Plaintiffs stated that the Postal Service's production with regard to Request 1 was complete. Plaintiffs requested the official retention policy for cargo manifests and indicated a willingness to clarify Requests 2, 4, and 5.

14. The Postal Service explained to Plaintiffs that cargo manifests fall under the category of "carrier network tracking records" and thus "are retained for up to 30 days for mail and up to 90 days for packages and special services." *See* Handbook AS-353, Guide to Privacy, the Freedom of Information Act, and Records Management, § 802.200 (Mail Management and Tracking Activity, Retention and Disposal), available at https://about.usps.com/handbooks/as353/as353apdx_049.htm.

15. On July 22, 2022, Plaintiffs first referenced the OIG report entitled, "Service Performance of Election and Political Mail During the 2020 General Election." Based on the OIG report, Plaintiffs speculated that the Postal Service had records as to the specific contents within a particular container. Plaintiffs are incorrect; the Postal Service does not have that the "cargo manifest" information that Plaintiffs asked for. but the Postal Service agreed to draw as much information as possible from a variety of different computer systems.

16. The Postal Service reached out to Postal Service personnel within the Package Tracking, Surface Visibility and Informed Visibility groups. After a thorough search, the Postal Service produced to the Plaintiffs, on or about September 15, 2022, the more general information, in the form of two spreadsheets, it had about container contents for the contract routes in question. Specifically, the "Containers and Trips" spreadsheet provided container placard bar codes for the containers on the trucks on the routes on the days that Plaintiffs

specified in their FOIA request. The container placard bar codes corresponded with container placard bar codes on the second spreadsheet, the "Container Contents" spreadsheet, which showed the parcel ID codes of the specific pieces of mail in those containers and whether those pieces of mail were (1) parcels, and if a parcel, whether it weighed more than or less than one pound, or (2) an envelope, and if an envelope, whether it was first class or priority mail.

17. As to Requests 2, 4, and 5, after obtaining some clarification from Plaintiffs, the Postal Service reached out to Supply Management, through the Procurement Law Department.

18. After an extensive search, through three branches within Supply Management, the Postal Service, on February 8, 2023, produced all the responsive records it could locate that would address Plaintiffs' clarified Requests 2, 4 and 5. These records consisted of a contract activity log, an email to one of the private carrier about an audit, an amendment to a transportation services contract, a negotiated cost statement, a daily log report, and a highway contract route schedule information document, with redactions that Plaintiff has not challenged.

19. In Plaintiffs' Motion for Summary Judgment, they stated that the OIG Report referenced and exhibited election mail logs that fell within the scope of his FOIA request, but that the Postal Service did not produce. The Postal Service advised Plaintiffs that election mail logs fell outside of the scope of his request, but nevertheless, in an effort to resolve this dispute without further litigation, the Postal Service produced those documents with appropriate redactions. Plaintiffs insisted that the Postal Service was not being "forthcoming" and wanted to proceed in litigation.

**ADEQUACY OF THE SEARCH**

20. The Postal Service conducted a thorough search for responsive records where they are most likely to exist, at every point in this long process. Initially, when the Postal

Service was unclear on what the Plaintiffs were seeking, the Postal Service produced information in response to the only clear request, that of Request 1, which sought the contracts for specific routes. These documents were produced immediately.

21. The Postal Service has maintained and continues to maintain that it does not have "cargo manifests" that Plaintiffs sought in Request 3. Cargo manifests are stored on site and are not stored at Federal Records Centers or commercial storage. Cargo manifests are destroyed on-site following the 90-day retention period. The Postal Service did initially state that the destruction period was 30 days, which was an error that was corrected. The Postal Service regrets any initial confusion. The Postal Service corrected its error long ago and provided Plaintiff with evidence of the retention period.

22. After clarifying conversations, the Postal Service continued to work with Plaintiffs in good faith to understand what in fact Plaintiffs were seeking. And pursuant to two of these clarifying conversations, the Postal Service did in fact produce more information.

23. Specifically, on July 29, 2022, the Postal Service had a clarifying conversation with Plaintiffs, where he used the OIG report to explain what he was seeking. Although the Postal Service did not have the exact information Plaintiffs were looking for, after an extensive search through three Postal Service departments and systems, Package Tracking, Informed Visibility and Surface Visibility, the Postal Service produced responsive material on September 15, 2022. *See supra* ¶ 16.

24. Likewise, on December 14, 2022, the Postal Service had another conversation with Plaintiffs in which Plaintiffs attempted to clarify what they were seeking regarding Requests 2, 4 and 5. Based on this conversation, the Postal Service searched through three

departments within Supply Management for more responsive records. The Postal Service produced this information to the Plaintiffs on February 8, 2023. *See supra* ¶ 18.

25. Plaintiffs' discontent and failure to understand the information that the Postal Service has produced does not render the searches and subsequent productions inadequate.

26. Moreover, Plaintiffs' speculation that more must exist, absent evidence to the contrary, also does not render the Postal Services' good faith search efforts and productions inadequate.

**ELECTION MAIL LOGS**

27. Election mail logs are kept in the form of spreadsheets, on site at a particular sorting location.

28. The election mail logs are completed by the Processing and/or Delivery personnel. The logs detail the receipt of election mail, including the date of receipt at the location, the source of the election mail, and the disposition of the mailing.

29. This is only done for the election mail that is classified as "bulk," because you cannot log individual mail pieces from collections or those that are mixed with other mail pieces.

30. Election mail logs are for internal purposes, in order to account for the clearance of election mail. Election mail logs are not a contractual item. They are not associated with any shipping or trucking contracts.

31. Once election mail is sorted from bulk pallets into delivery-point sequence, they are no longer tracked. The election mail has entered the mail-stream and the Postal Services does not track election mail separately from other mail.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration is true and correct. Executed in Washington, D.C., on February 28th, 2024.

Janine Castorina

Digitally signed by Janine Castorina
Date: 2024.02.28 13:58:12 -05'00'

Janine Castorina