UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN R. DELLA ROCCA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES POSTAL SERVICE, <br><br> Defendant. | Civil Action No. 22-0786 (DLF) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, Defendant United States Postal Service ("Defendant" or "the Postal Service") respectfully moves for summary judgment for the reasons explained herein.

The Postal Service has gone well beyond its legal obligation to conduct a reasonable search in response to Plaintiffs' ever-evolving Freedom of Information Act ("FOIA") request. Despite Defendant's best efforts, Plaintiffs remain dissatisfied and speculate that there should be more responsive documents. But "mere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir 2004).

As there are no material facts in genuine dispute, the Postal Service respectfully moves for summary judgment as to all claims. The Postal Service's memorandum of points and authorities, statement of facts, and supporting declarations establish that it is entitled to summary judgment in its favor.

**LEGAL STANDARD**

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To prevail on a motion for summary judgment in a case brought under . . . FOIA when the adequacy of an agency search is challenged, the 'defending agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Wilson v. Dep't of Just.*, 270 F. Supp. 3d 248, 254 (D.D.C. 2017) (quoting *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007)) (other citation omitted). Applying "the reasonableness test to determine the adequacy of a search methodology[,]" "a 'FOIA search is sufficient if the agency makes a good faith effort to conduct a search for the requested records, using the methods which can be reasonably expected to produce the information requested.'" *Id.* (quoting *Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 315 (D.C. Cir. 2006); other citation omitted). If a plaintiff does not provide evidence that an agency has acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations, provided that the declarations are not conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *Rojas-Vega v. Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 306 (D.D.C. 2018) (internal quotation marks omitted).

**ARGUMENT**

I. **The Postal Service Conducted a Reasonable Search.**

An agency is entitled to summary judgment if it establishes that it conducted an adequate search and produced all non-exempt information that it located and that is responsive to a plaintiff's FOIA request. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). To make

a prima facie showing of adequacy, the agency must demonstrate that it made a good-faith effort to search for responsive records "using methods which can be reasonably expected to produce the information requested." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler*, 473 F.3d at 318. "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice[.]" *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted); *see also Wilbur*, 355 F.3d at 678 ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

Janine Castorina, the Postal Service's Chief Privacy and Records Management Officer, explained in her declaration that Plaintiffs' FOIA request for information about four Postal Service contracts with private carriers consisted of five separate sub-requests (Requests 1 to 5). ECF No. 29-1 (Castorina Decl.) ¶ 5. As to Request 1, the contracts themselves, the Postal Service released redacted contracts, Plaintiffs have never objected to those redactions, *id.* ¶¶ 7, 10, 13, and the parties have reported that Request 1 has been satisfied, ECF No. 26 (Jt. Status Rep., Nov. 17, 2023) ¶ 7.

Requests 2, 3, 4, and 5, however, were not as straightforward. As to Request 3, the "cargo information," Ms. Castorina explained that such records, specifically the "cargo manifests" from

October 2020, were only maintained for ninety days (correcting a previous statement that the retention period was only thirty days), and thus, were no longer available as of early 2021, well before Plaintiffs' January 2022 FOIA request. ECF No. 29-1 (Castorina Decl.) ¶¶ 7, 8, 21; *see* Handbook AS-353, *Guide to Privacy, the Freedom of Information Act, and Records Management*, § 802.200 (Mail Management and Tracking Activity, Retention and Disposal), available at https://about.usps.com/handbooks/as353/as353apdx_049.htm (stating that "carrier network tracking records are retained for up to 30 days for mail and up to 90 days for packages and special services"). Plaintiffs later redefined Request 3 as seeking "records as to the specific contents within a particular container," which the Postal Service did not have, but the Postal Service was able to provide to Plaintiffs two spreadsheets showing, more generally, the container contents for the contract routes in question. ECF No. 29-1 (Castorina Decl.) ¶¶ 15, 16; *see infra* at 6 (discussing contents of disclosed spreadsheets).

Ms. Castorina explained that Requests 2, 4, and 5—"activity records/reports," "administrative notes," and "billing information" relating to the contracts—were "overly broad." ECF No. 29-1 (Castorina Decl.) ¶ 7; *see also, e.g.*, *Evans v. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) ("Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'") (quoting 5 U.S.C. § 552(a)(3)(A)); *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (request must allow the agency "to determine precisely what records are being requested"); *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) ("[b]road, sweeping requests lacking specificity are not sufficient").

The Postal Service solicited clarification from Plaintiffs on multiple occasions. Initially, Plaintiffs were unable to more clearly describe what records they were seeking. ECF No. 29-1 (Castorina Decl.) ¶¶ 8, 9; Ex. 1 (Am. Suppl. Castorina Decl.) ¶¶ 9, 10. The parties, thereafter, had

a telephone call, on or about July 22, 2022. Ex. 1 (Am. Suppl. Castorina Decl.) ¶ 17. After this call, for Request 5 ("billing information"), it was the Postal Service's understanding that Plaintiffs were seeking billing reconciliation information (the process by which companies check the work billed against the work done). *Id.* The Postal Service, however, pays per the contract schedule and does not do this kind of reconciliation. *Id.* As such, the Postal Service does not have that information. *Id.*

After the call, the Postal Service understood that for Requests 2 ("activity records/reports") and 4 ("administrative notes"), Plaintiffs were looking for information about what cargo was on the trailers and any logs that showed contract route information. *Id.* ¶ 18. Based on its new understanding of what Plaintiffs were looking for in Requests 2 and 4, although the Postal Service does not have records as to the specific contents within a particular container, the Postal Service agreed to produce as much content information as possible. *Id.* ¶ 20. Content information can be found by compiling information from three departments' computer systems: Package Tracking, Surface Visibility, and Informed Visibility. *Id.* The Package Tracking computer system maintains delivery status information. *Id.* The Surface Visibility computer system maintains information regarding the scan events when mail and other mailable items are scanned into containers and trailers. *Id.* The Informed Visibility computer system maintains information about mail tracking data for containers, handling units, bundles, and pieces. *Id.* Putting the information together from these three departments' computer systems is the closest the Postal Service can come to identifying the contents of containers, responding to the Postal Service's new understanding of what Plaintiffs were seeking in Requests 2 and 4, namely, information about what cargo was on the trailers and any logs that showed contract route information. *Id.* The Postal Service reached out to Postal

Service personnel within these three departments because no other departments within the Postal Service would contain any information regarding container contents. *Id.*

A search was conducted in each of these three computer systems. *Id.* ¶ 21. The search began with Surface Visibility. *Id.* The Postal Service used the route number and the contract number to locate the particular containers associated with the routes and contracts. *Id.* The container information was provided to Informed Visibility and Package Tracking to search for any information that the Postal Service had about the particular containers in question. *Id.* After the search, the Postal Service produced to Plaintiffs, on or about September 15, 2022, two spreadsheets about the general container contents for the contract routes in question, although the Postal Service does not have records as to the specific contents within a particular container. *Id.* Specifically, the "Containers and Trips" spreadsheet provided container placard bar codes for the containers on the trucks on the routes on the days that Plaintiffs specified in their FOIA request. *Id.* The container placard bar codes corresponded with container placard bar codes on the second spreadsheet, the "Container Contents" spreadsheet, which showed the parcel ID codes of the specific pieces of mail in those containers and whether those pieces of mail were (1) parcels, and if a parcel, whether it weighed more than or less than one pound, or (2) an envelope, and if an envelope, whether it was first class or priority mail. *Id.*

To locate any remaining information the Postal Service might have related to Requests 2, 4, and 5, any logs that showed contract route information and billing logs and cost breakdowns, the Postal Service reached out to Supply Management, through the Procurement Law Department. *Id.* ¶ 22. The Postal Service turned to Supply Management to determine if additional records that met the new criteria could be located because Supply Management is responsible for all highway contracts that the Postal Service enters. *Id.* ¶ 23. Ms. Castorina sought records from Supply

Management sub-department Surface Transportation Contracts (specifically sections Local Distribution and Processing Network) because Local Distribution and Processing Network cover highway contracts, which are at issue here. *Id.* Local Distribution covers highway contracts that involve mail traveling from plant to Post Office. *Id.* Processing Network covers long haul highway contracts that transport mail over distances. *Id.* Ms. Castorina also sought records from the Logistics section of Supply Management, independent of Surface Transportation Contracts, because Logistics also has a highway contracts section, which covers contracts that cross area boundaries. *Id.* Thus, Local Distribution, Processing Network, and Logistics are the three sections within Supply Management that were searched. *Id.* There are no other sections within Supply Management that cover highway contracts, which are the type of contracts at issue here. *Id.*

All records in Supply Management are stored by contract number. *Id.* ¶ 24. Local Distribution, Processing Network, and Logistics electronically searched their records by the contract numbers in question. *Id.* The Postal Service, on February 8, 2023, produced all the responsive records it could locate within Local Distribution, Processing Network, and Logistics. *Id.* ¶ 25. These records consisted of a contract activity log, an email to one of the private carriers about an audit, an amendment to a transportation services contract, a negotiated cost statement, a daily log report, and a highway contract route schedule information document, with redactions that Plaintiffs have not challenged. *Id.*

Notably, the fact that the Postal Service identified responsive records, upon further clarification after its initial responses, is evidence of the Postal Service's good faith, not bad faith. In *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986), the D.C. Circuit rejected the argument that later-produced records call the adequacy of search into question because "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file." The

D.C. Circuit held that the additional releases suggest "a stronger, rather than a weaker, basis" for accepting the integrity of the search, and rejected "appellants' allegations of bad faith." *Id*.

As Ms. Castorina stated, "The Postal Service conducted a thorough search for responsive records where they are most likely to exist, at every point in this long process. Initially, when the Postal Service was unclear on what the Plaintiffs were seeking, the Postal Service produced information in response to the only clear request, that of Request 1, which sought the contracts for specific routes. These documents were produced immediately." ECF No. 29-1 (Castorina Decl.) ¶ 20. "Cargo manifests" sought in Request 3, however, were no longer available pursuant to the Postal Service's retention policy. *Id.* ¶ 21; *see* Handbook AS-353 § 802.200 (stating that "carrier network tracking records"—a category that includes "cargo manifests"—"are retained for up to 30 days for mail and up to 90 days for packages and special services"). Ultimately, after receiving clarification from Plaintiffs, the Postal Service produced information showing, generally, the container contents for the contract routes in question, but more specific information was not available. ECF No. 29-1 (Castorina Decl.) ¶¶ 16, 22, 23; Ex. 1 (Am. Suppl. Castorina Decl.) ¶ 21. Likewise, after seeking clarification regarding "activity records/reports," "administrative notes," and "billing information" in Requests 2, 4, and 5, the Postal Service produced further information. ECF No. 29-1 (Castorina Decl.) ¶ 18; Ex. 1 (Am. Suppl. Castorina Decl.) ¶ 25.

In the end, as Ms. Castorina explained in her declaration, the Postal Service went above and beyond its obligation to conduct a reasonable search, engaging in an interactive process that exemplifies its good-faith efforts to respond to Plaintiffs' request for information. Ultimately, however, "Plaintiffs' discontent and failure to understand the information that the Postal Service has produced does not render the searches and subsequent productions inadequate." ECF No. 29-1 (Castorina Decl.) ¶ 25. "Plaintiffs' speculation that more must exist, absent evidence to the

contrary, also does not render the Postal Services' good faith search efforts and productions inadequate." *Id.* ¶ 26; *see Wilbur*, 355 F.3d at 678 ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

## II.     Plaintiffs Have Not Provided Evidence of Bad Faith.

Ms. Castorina's declarations are afforded a presumption of good faith. *SafeCard*, 926 F.2d at 1200. Absent a showing by Plaintiffs "of countervailing evidence or apparent inconsistency of proof," her declaration "will suffice." *Perry*, 684 F.2d at 127. "[P]urely speculative claims about the existence and discoverability of other documents" does not overcome the good-faith presumption. *SafeCard*, 926 F.2d at 1200.

Plaintiffs may attempt to rebut this good-faith presumption in two central ways. First, Plaintiffs may argue, as they did in their prior summary judgment motion, that the Postal Service did not provide election mail logs that were exhibits to the Office of Inspector General's report that concluded that truck driver Jesse Morgan's allegations about missing election mail could not be corroborated. ECF No. 28 (Pl. Mot. Summ. J.), at 5, 8, 9. Plaintiffs may argue that the Postal Service should have disclosed the election mail logs because the logs fall within Request 3 ("Any and all cargo information (manifests, weights, types of cargo, etc.) relating to each contract [Contracts 11736, 17014, 001A1, and 117QJ].") and Request 4 ("Any and all administrative notes relating to any of the above contracts."). Plaintiffs' argument falls flat.

It is inaccurate to say that election mail logs fall under the categories of "cargo information" or "administrative notes." This argument misapprehends the information contained on election mail logs and their function. Election mail logs are not tied to pieces of mail being transported by the truck, but rather, the logs describe the election mail that arrives at a sorting facility "to account for the clearance of election mail," where it is then sorted for distribution. ECF No. 29-1 (Castorina

Decl.) ¶¶ 27, 28. The logs do not depict the destination of the mail, let alone the truck that will carry it. "The logs detail the receipt of election mail, including the date of receipt at the location, the source of the election mail, and the disposition of the mailing." *Id.* ¶ 28. The logs "are not associated with any shipping or trucking contracts." *Id.* ¶ 30. "Once election mail is sorted from bulk pallets into delivery-point sequence, they are no longer tracked. The election mail has entered the mail-stream and the Postal Services does not track election mail separately from other mail." *Id.* ¶ 31. Therefore, election mail logs do not fall under the umbrella of "cargo information," and thus, the Postal Service had no obligation to search for them or produce them.

Likewise, Plaintiffs previously contended that "election mail logs would fit into Plaintiffs' request for 'administrative notes' as the logs are administratively maintained notes about election mail being transported by the truck." ECF No. 28 (Pl. Mot. Summ. J.), at 8. As Defendant has maintained, the term "administrative notes" lacks clarity and inclusion of election mail logs in the category of administrative notes because they are "administratively maintained" is a strained interpretation that would include just about any Postal Service recordkeeping. This interpretation would fall well beyond an agency's reasonable search obligations. *Tax Analysts* 117 F.3d at 610 (request must allow the agency "to determine precisely what records are being requested"); *Dale* 238 F. Supp. 2d at 104 ("[b]road, sweeping requests lacking specificity are not sufficient").

Moreover, even if the logs fell within these categories of information, the logs "are not a contractual item," ECF No. 29-1 (Castorina Decl.) ¶ 30, and thus, do not fall within the scope of Plaintiffs' contract-specific FOIA request. *Id.* ¶ 5 ("All requests . . . relate to the followed listed contracts"). Rather, the contracts that Plaintiffs identified are agreements between the Postal Service and private carriers to cover particular routes. Election mail logs, on the other hand, are kept at the sorting facility where the election mail is cleared and distributed. *Id.* ¶¶ 28, 30. The

logs "are not associated with any shipping or trucking contracts." *Id.* ¶ 30.  Thus, Plaintiffs' FOIA request that requests information relating to certain contracts between the Postal Service and private contractors to cover certain trucking routes does not encompass election mail logs.

Importantly, although the Postal Service had no obligation to provide the election mail logs that were exhibits to the Office of Inspector General report because they do not fall under the scope of their FOIA request for the reasons explained, after Plaintiffs identified the election mail logs as the sticking point in their motion for summary judgment, the Postal Service did, in fact, disclose them to the extent they were not exempt under FOIA, and thus, this issue is moot. *Boyd v. Crim. Div. of Dep't of Just.*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("because the report was located in the work file and subsequently disclosed, the issue is moot for purposes of this FOIA action"); *Drake v. FAA*, 291 F.3d 59, 67 (D.C. Cir. 2002) (holding that disclosure mooted FOIA dispute); *Perry*, 684 F.2d at 125 (FOIA dispute mooted when agency produces requested record).

Second, Plaintiffs' attempt to overcome the good-faith presumption of Ms. Castorina's declaration by questioning the destruction of records would fail too.  ECF No. 28 (Pl. Mot. Summ. J.), at 9.  Plaintiffs previously argued that the Postal Service "provided no proof of the destruction of the requested records" and relies on Handbook AS-353, Section 6-5.1 as the source of the agency's duty to keep a "Records Disposal Notice." *Id.*  But Handbook AS-353, Section 6-5.1, is inapplicable as it applies only to records maintained at "a[ ] [Federal Records Center] or commercial storage." *See* https://about.usps.com/handbooks/as353/as353c6_015.htm# ep998397. Cargo manifests, however, are stored on site—not at a Federal Records Center or commercial storage—and thus there would be no records disposal notice under § 6-5.1.  ECF No. 29-1 (Castorina Decl.) ¶ 21.  Cargo manifests are considered "carrier network tracking records" under

- 11 -

§ 802.200, and thus, are retained for a maximum of ninety days and are then destroyed. *Id.* ¶¶ 14, 21. There is no records disposal notice requirement for such records. *Id.*

For these reasons, the Court should grant summary judgment in Defendant's favor.

## CONCLUSION

The Court should grant Defendant's motion for summary judgment.

Dated: October 24, 2024
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:     */s/ M. Jared Littman*
    M. JARED LITTMAN
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-2523
    Jared.Littman@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN R. DELLA ROCCA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES POSTAL SERVICE, <br><br> Defendant. | Civil Action No. 22-0786 (DLF) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion for summary judgment, and the entire record herein, it is this ____ day of _____, 2024,

ORDERED that Defendant's for Summary Judgment is, GRANTED; and it is further

ORDERED summary judgment is hereby ENTERED in favor of Defendant on Plaintiffs' claims in this action.

SO ORDERED:


_____          _____
Dated                                DABNEY L. FRIEDICH
                                     United States District Judge